*J. H. Brown* and *J. Park*, for the appellee.

----•◆•◦•----

ALLEN and Others *v.* DAVISON.

Where instructions given by the Court are signed by the judge, and filed, they become a part of the record without being incorporated in a bill of exceptions.

A party, where there is to be a general verdict, has a right to have a response to particular questions of fact, the same being pertinent and involved in the issues; but the Court may control the form of the questions, and the manner of propounding them, and need not require them to be answered in the form prepared by counsel.

A specific performance of an agreement for the conveyance of real estate, can only be enforced where the agreement has been executed upon a *valuable* consideration; a *good* consideration, merely, is not sufficient.

In the year 1832, *A.* had born to him an illegitimate son, whom he recognized as such, and named *B.* The maternal grandfather of *B.* threatened a legal prosecution against *A.*, and to settle the matter, *A.* gave to the mother $200, and entered into an agreement in writing, with the grandfather, by which the latter was to keep the child until he became fourteen years of age, his mother consenting and giving up all claim to the child, and *A.* was, at a future time, to convey a certain tract of land to the said bastard, *B.*

*Held,* that under the provisions of the statute then in force, *A.* was liable to be charged with the maintenance of the child, in a prosecution by the mother, or, upon her default, by the overseers of the poor, and was further liable to a suit by the mother for damages.

*Held,* also, that the amount paid to the mother did not in any way affect *A.'s* liability to be sued for the maintenance of the child, and such liability furnished an ample *valuable* consideration to support his agreement to convey the land.

*Held*, also, that the suit was well brought in the name of *B.*, the contract having been made for his benefit.

*Held*, also, that a suit for specific performance is not within the statute providing for new trials without cause, in certain cases.

May Term,
1861.

ALLEN
. v.
DAVISON.

*Friday,
June 14.*

APPEAL from the *Carroll* Circuit Court.

WORDEN, J.—This was an action by *John Davison*, the appellee, against the appellants, who are heirs at law of *John J. Davison*, deceased, to enforce the specific performance of a contract for the conveyance of certain real estate. Verdict and judgment for the plaintiff.

The facts are, in substance, as follows: *John Davison* is the illegitimate child of *John J. Davison*, deceased. He was begotten and born in *Tippecanoe* county, in this State. He was born in the year 1832, his mother, *Sarah Phillips*, being then about eighteen years old, and residing with her father, *Simon Phillips*.

After the plaintiff's birth, he was named by his natural father, and recognized by him as his child. *Simon Phillips*, the father of the plaintiff's mother, threatened to institute legal proceedings against *John J. Davison*, in consequence of the begetting and birth of the plaintiff. In *March* 1833, the parties met, and to settle all controversy in the premises, *Davison* gave to the plaintiff's mother $200 in money, and also a mare; he also entered into an agreement with *Simon Phillips*, by which the latter was to keep the plaintiff until he should be fourteen years old, his mother consenting thereto, and agreeing, on her part, to give up all claim to the child until that time. *Phillips* was then a tenant of *Davison's* on the land in controversy, and was to apply a portion of the rents and profits to the support of the child. *Davison* was to convey the land to the plaintiff at a future time. This agreement was reduced to writing, and signed by *Davison*, and delivered to said *Simon Phillips*. It has since become lost, but it may be gathered from the evidence that it contained the above stipulations. This suit was brought to enforce the conveyance thus stipulated for.

We will notice the points relied upon in the briefs of counsel for the appellants, to reverse the judgment. On the trial, the Court permitted evidence to be given to the jury, over

the objection of the defendants, showing the amount of property left by *John J. Davison* at his decease, viz., $34,000.

Any injury which this evidence might have caused the defendants, was obviated by a charge given by the Court to the jury, as follows: "The testimony given in evidence to you, as to the amount of property of which *John J. Davison* died possessed, can not be considered by you in determining whether or not he executed the alleged bond."

It is objected, however, that this charge is not properly in the record, and can not therefore be noticed by this Court. We think the charge is a part of the record. This charge, in connection with several others, is signed by the judge who tried the cause, under his statement that they were given to the jury. The statute provides, that "All instructions given by the Court must be signed by the judge, and filed, together with those asked for by the parties, *as a part of the record.*" 2 R. S., § 324, specification 6, p. 109.

Where this statute is complied with, as was done in this case, the instructions given become, undoubtedly, a part of the record without being incorporated in a bill of exceptions. The fact that *Davison* died wealthy, might have afforded an inference that he was in affluent circumstances at the time of the alleged execution of the bond, and, hence, it might not be deemed unreasonable to suppose that such bond might have been executed by him. But the jury having been told to disregard this testimony, in determining whether or not the bond was executed, we do not perceive that the evidence could have injured the defendants.

The next objection is, that parol evidence was received of the contents of the bond, without a sufficient foundation having been laid. Upon looking into the evidence, we are satisfied that there was sufficient proof of the loss of the bond, and search in places where it was most likely to have been found, to admit parol evidence of its contents.

The plaintiff read in evidence the deposition of *Sarah Burke,* formerly *Sarah Phillips,* his mother. Afterward, and without any impeachment of the capacity or credibility of said witness, he proved by another witness, the defendants objecting, that said *Sarah* had been a school teacher, and was, as

the witness thought, a very intelligent woman. The admission of this testimony was perhaps irregular, but we regard the irregularity as by no means sufficient to justify a reversal of the judgment. That the witness whose deposition had been read had been a school teacher, was perhaps properly proven. This question might have been asked of herself. Nothing is more common than to inquire the age, residence, and occupation of witnesses; and we see no impropriety in such evidence. The statement of the witness, that he regarded Mrs. *Burke* as a very intelligent woman, could not have materially affected the rights of the defendants, and the error, if error was committed, was harmless.

The next, and a more important question is, whether the Court erred in refusing to propound certain questions to be answered by the jury. At the proper time, the defendants prepared, in writing, particular questions of fact, and asked the Court to direct the jury, if they found a general verdict, to find specially upon those questions. The Court refused to direct the jury to return answers to the questions, as prepared by the counsel for the defendants, but itself prepared the questions to be answered by the jury. The questions, as prepared by the Court, which the jury were required to answer if they found a general verdict, and the answers of the jury thereto, are as follows, viz.,

*Question* 1.—Is the plaintiff the illegitimate son of *John J. Davison*, as charged in the complaint?

*Answer.*—Yes.

*Question* 2.—Did the said *John J. Davison* acknowledge himself to be the father of complainant, as charged in the complaint?

*Answer.*—Yes.

*Question* 3.—Did the said *John J. Davison*, in his lifetime, make, execute, and deliver to the said *Simon Phillips*, the grandfather of the complainant, a bond containing provisions or stipulations for the benefit of the complainant?

*Answer.*—Yes.

*Question* 4.—Did, or did not, the said bond obligate the said *John J. Davison* to convey real estate to the complainant, as charged in the complaint?

May Term,
1861.

ALLEN
v.
DAVISON.

May Term,
1861.

ALLEN
v.
DAVISON.

*Answer.*—Yes.

*Question* 5.—What quantity of real estate was so to be conveyed? When was the conveyance to be executed, and how was the land described?

*Answer* 1.—All the *Birmingham* place, as claimed by the plaintiff. 2. When the plaintiff came of age. 3. As the *Birmingham* place.

*Question* 6.—What was the consideration of such bond?

*Answer.*—To buy his peace, and satisfy the demands of justice.

*Question* 7.—What was the character of the conveyance which the said *John J. Davison* was to execute to said complainant?

*Answer.*—A deed in fee simple.

*Question* 8.—Did the bond contain a provision that the said *John J. Davison* should convey by lawful deed the lands specified therein?

*Answer.*—Yes.

There was also a general verdict for the plaintiff.

On comparing the questions propounded by the Court and answered by the jury, with those proposed by counsel for the defendants, we think the former embrace, substantially, the whole matter of the latter; and indeed, they seem to cover the substance of the whole case.

The only question upon this point yet to be determined, is whether a party has a right to have questions of fact answered in such manner and form as he may propound them; or whether the Court may mold and shape the questions to be thus answered by the jury. This depends upon the statute; which provides that "In all actions the jury, unless otherwise directed by the Court, may, in their discretion, render a general or a special verdict; but the Court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues; and in all cases, when requested by either party, shall instruct them, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing." Code, § 336.

By whom the particular questions of fact are "to be stated in writing," the statute does not, in terms, provide; and we

think it clear, that such questions, so far as their form and the manner of their being propounded are concerned, are entirely under the direction and control of the Court. A party, where there is to be a general verdict, has an undoubted right to have a response to particular questions of fact, such questions being pertinent to, and involved in, the issues being tried. But the Court may control the form of the questions, and the manner of their being propounded; and need not, necessarily, require them to be answered in the form prepared by counsel. There was no error committed by the Court in this respect.

It is objected that the evidence is not sufficient to prove the execution of the bond. We have examined the evidence carefully, and although it is, in some respects, vague, indefinite and contradictory, yet it strongly tends, to say the least of it, to sustain the verdict of the jury, and we do not think we should disturb the verdict on the evidence.

A more important, and perhaps the main, question in the case, is whether the bond was based upon a sufficient consideration. In order to enforce a specific performance, it would seem that the bond must have been executed upon a *valuable* consideration, as contradistinguished from a merely *good* consideration. 2 Story's Eq. Jur., § 793, *a;* § 793, *b*. This point, however, is not free from difficulty, and some apparent conflict in the authorities.

It may be gathered from the evidence in this case, that *John J. Davison* recognized his paternity of the child, and was willing to make ample provision for its support; that *Sarah Phillips*, the mother, claimed nothing from *Davison* on her own behalf, but was desirous that such provision should be made for the child; that she acted entirely under the control of her father, who had threatened, and perhaps had commenced, some legal proceedings against *Davison*. The arrangement was entered into by which *Simon Phillips* was to keep the child till he was fourteen years old, his mother releasing all right to his custody up to that time, and *Davison* was to convey the land mentioned to the child. There seems to have been an amicable and honorable adjustment of all liabilities growing out of the affair. In addition

to the provision made for the child, *Davison* gave the mother the two hundred dollars and the mare, in order, as he said, to satisfy himself that she would not come upon him afterwards.

Under the provisions of the statute in force at that time, the father of an illegitimate child was liable to be charged with its maintenance, upon the prosecution of a suit for that purpose by the mother, or, upon her default, by the overseers of the poor. He was *moreover liable to the suit of the complainant for damages.* R. S. 1831, p. 285.

The amount paid by *Davison* to the mother of the child, did not in any manner affect his liability to be sued for the maintenance of the child, whatever might have been its effect upon a suit, had she brought one, against him for damages. That arrangement did not purport to be in discharge of his liability for the child's maintenance. *Davison* was still liable for such maintenance, and he had the right to make provision therefor amicably, and without legal proceedings. And in making such provision, he might well stipulate for the future, as well as the immediate, benefit of the child. Such liability against *Davison* furnished an ample valuable consideration, and authorized the jury to say that the bond was given " to buy his peace and satisfy the demands of justice." *Vide Harter et al.* v. *Johnson, ante,* p. 271.

The suit was well brought in the name of the plaintiff, the contract having been made for his benefit. *Bird* v. *Lanius, &c.,* 7 Ind. 615.

There is but one more point made, which is that a new trial should have been granted, under the statute, without cause. The suit was for specific performance, and not within the statute providing for new trials, without cause, in certain cases. *Benner* v. *Benner,* 10 Ind. 256.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Z. Baird, J. E. McDonald* and *A. L. Roache,* for the appellants.

*Jno. Pettit, S. A. Huff, R. Gregory* and *R. Jones,* for the appellee.