LASICH v. THE OHIO SAVINGS BANK & TRUST CO.
ET AL.

*Trusts—Specific performance—Agreement for benefit of third person valid, when—Trust company accepts title to realty, agreeing to convey to third persons—Enforcement by purchaser complying with land contract and trust agreement.*

1. In a case where a trust company accepts title to real estate as a trustee, and by the terms of the trust agreement agrees to convey to third persons such part or parcel of the real estate as may be sold to them upon payment of the purchase price and compliance with the contract for purchase and the trust agreement, and where such trust company, during the continuance of the trust relation, receives notice that a third person, purchasing a portion of such real estate, has fully complied with his contract and the trust agreement, a trust arises in favor of such third person against the trust company as to the part of real estate so sold, which may be enforced in an action for equitable relief.
2. Such a trust agreement is a contract made for the benefit of third persons, and as to such third persons is not invalid for want of mutuality.

(Decided March 16, 1925.)

APPEAL: Court of Appeals for Lucas county.

*Mr. Samuel Z. Kaplan,* for plaintiff.
*Messrs. Taber, Chittenden, Northup & Daniells,* for defendants.

WILLIAMS, J.  This cause comes into this court by way of appeal, and is an action for specific

[1] Contracts, 13 C. J. § 809; Specific Performance, 36 Cyc. p. 770; Trusts, 39 Cyc. pp. 523, 524; [2] Trusts, 39 Cyc. p. 523.

performance, the purpose being to compel the defendant, the Ohio Savings Bank & Trust Company, trustee, to convey to the plaintiff a lot of land which the plaintiff claims to have purchased and fully paid for. The action is based upon a written contract which is in common use in Toledo in connection with the subdivision and sale of land. It reads as follows:

"This agreement made and concluded at Toledo, Ohio, by and among Frank Collins, party of the first part, William F. Greenbaum and Louis Dery, parties of the second part, and the Ohio Savings Bank & Trust Co., hereinafter called the trustee.

"Whereas the party of the first part is the owner of the real property described as follows: The north half (½) of the west half (½) of the northeast quarter (¼) of section thirty-three (33) township nine (9) south, range eight (8) in Oregon township, Lucas county, Ohio, subject to all legal highways. Also the north half (½) of the east twelve (12) acres of the east half (½) of the northwest quarter (¼) of section thirty-three (33) town nine (9) south, range eight (8) east in the city of Toledo, Lucas county, Ohio, excepting legal highways, altogether containing forty-six acres of land more or less. Together with the privileges and appurtenances thereto belonging;

"Whereas, the party of the first part is willing to sell and the parties of the second part are willing to buy said land for seventy-three thousand six hundred dollars ($73,600.00) of which amount eight thousand ($8,000.00) dollars shall be paid on the signing of this agreement and sixty-five

thousand six hundred ($65,600.00) dollars shall be paid in manner hereafter set forth and fully paid within ten years from the date hereof with interest thereon from the date hereof at the rate of 6 per cent. per annum, payable semiannually to the trustee; and

"Whereas the parties of the second part desire to have said land platted into lots with streets, under an arrangement whereby each lot may be released from the purchase-money lien of the unpaid balance of said $65,600.00 and the interest accrued on the release value of each lot with interest on such release value as hereinafter provided, schedule of such release values to be attached to this agreement, and marked 'Exhibit A';

"It is hereby agreed that in consideration of the covenants herein, of the parties of the second part, and the payment by them to the party of the first part of $8,000.00 on the signing of these presents, the party of the first part will convey said real property to the Ohio Savings Bank & Trust Company, as trustee, free, clear and unincumbered, except the taxes and assessments due and payable after the twentieth day of June, 1920, with opinion of title, showing title vested in the trustee free from material defects to be held and conveyed by said trustee under the following trusts and conditions:

"Said parties of the second part agree to buy said real property for the sum of $73,600.00, to pay to the party of the first part, $8,000.00 thereof on the signing of this agreement by all parties, to pay the trustee the remainder in the manner

herein provided with interest as aforesaid, to pay the taxes and assessments on said property due and payable December 20th, 1920, and thereafter as they become due, to keep all buildings now on said land fully insured in companies satisfactory to first party, and pay all insurance premiums for insurance on the buildings on said land and deposit said policies with the trustee, to pay all costs and expenses incident to the platting of said land, to grade and turnpike all streets in said plat of land, to lay stone or cement sidewalks on south side of York street of said plat, to pay for all said grading, turnpiking, and sidewalks and prevent the filing of mechanic's liens against said land therefor, and the same to be completed within one year from the date of this agreement.

"The plat of said lands shall be satisfactory to the first party, and approved by him. And when said plat shall be completed and approved by the city and county authorities having jurisdiction over the approval of said plat, the said party of the first part shall fix a schedule giving the lot number and opposite thereto the amount that must be paid to the trustee by the parties of the second part, or their nominee, which schedule shall be made in triplicate, one copy deposited with the trustee, one copy with the first party and one copy with the second party. Each schedule shall be signed by all parties hereto.

"The trustee shall semiannually make a detailed report of its transactions under this contract, and from the funds so received by it shall, after deducting from said funds its compensation and ex-

pense, pay the balance of the sum one-third (1/3) to George K. Detwiler, one-third (1/3) to Karl N. Hardee, and one one-third (1/3) to Frank Collins.

"The parties of the second part shall be under no obligation as to the disposition or application of the money paid by them to the said trustee.

"The right of possession of the parties of the second part and said trustee shall be subject to a lease of said property whereby the lessee is entitled to hold said land only to the 15th day of March, 1920.

"It is expressly agreed and understood by the parties hereto that the party of the first part and said trustee do not assume any obligations or responsibility to any persons to whom the parties of the second part may sell or contract to convey the whole or any part of said property and said trustee shall be bound to the parties of the second part only to convey said land to the parties of the second part or their nominees upon the performance of the terms and conditions herein to be kept and performed by said second parties herein expressly set forth.

"The said second parties shall pay all taxes and assessments levied and assessed against said property, now or hereafter, due and payable after the payment due June 20th, 1920, and shall pay the same before any penalty or interest shall accrue thereon, and file such tax receipts with the trustee.

"The trustee will hold the legal title to said property so long as no default shall be made by

the said second parties in the faithful performance of each and every condition and payment by them to be made and performed; any failure of the second parties to keep and perform the conditions or acts to be done by said parties, the trustee shall upon written demand of said first party and ten days' notice to said second parties reconvey said premises to the first party, except such parts therein as said trustee has already conveyed to second parties or their nominees and this agreement and trust hereby created, shall cease and terminate and be void.

"The trustee shall not be responsible for any act, omission or default of the said second party, or of any agent, person, or attorney employed by them and shall only be responsible for its own acts or fraud.

"The trustee may terminate the trust hereby created in any manner and at any time it may deem proper and upon reasonable notice to the other parties hereto.

"Said trustee will upon payment to it of the full release value of any lot, or lots, set out in the attached schedule, and the interest from the last semiannual payment, on the release price of such lot, or lots, and the revenue required on the selling price and one ($1.00) dollar for preparation of each deed, execute a deed for such lot, or lots to said second parties or their nominees.

"This agreement shall benefit and bind the heirs, administrators, executors, legal representatives and assigns of the parties.

"In witness whereof the parties have hereunto

subscribed their names this 28th day of February, 1920.

        "[Signed] Frank Collins,
              "First Party.
        "Wm. F. Greenbaum,
        "Louis Dery,
              "Second Parties.

"Signed and delivered in the presence of:
    "[Signed] W. A. Knipp.
        "Joseph G. Gluck.
      "The Ohio Savings Bank & Trust Company
        of Toledo, Ohio, by
    "[Signed] F. P. Kennison, Trust Officer."

As a part of the transaction under that contract, Frank Collins executed and delivered to the Ohio Savings Bank & Trust Company, as trustee, by warranty deed, the premises described in the contract. That deed contained the following provisions:

"This conveyance is made for the uses and purposes and subject to the following trusts, to wit:

"(1) Trustee may bargain, sell, dispose of and convey said premises or any part thereof, and may contract for the sale or disposition of said premises or any part thereof in accordance with the terms and provisions of a certain agreement dated February 28, 1920, between Frank Collins as first party, William F. Greenbaum and Louis Dery, parties of the second part, and the Ohio Savings Bank & Trust Company, trustee, reference to which is hereby made, but no purchaser, grantee, firm, person or corporation contracting with said trustee or accepting a conveyance from said trustee

or otherwise dealing with said trustee with reference to said premises or any part thereof, shall be obligated to see to the application of the proceeds of sale or be in any manner obligated or bound by said agreement of February 28, 1920, nor shall they be permitted to inquire into the terms and provisions thereof.

"Any and all contracts, deeds, instruments of conveyance or other acts of the trustee shall be absolutely binding upon the parties executing said agreement of February 28, 1920.

"(2) Said trustee shall not be responsible for or liable in any respect for the execution, recording or validity of this deed nor for the validity or sufficiency of the title to said premises, nor for keeping paid the taxes, charges, assessments or liens upon or against said premises nor for any act, omission or representation of any person, agent or attorney, whether selected by it or otherwise, nor for any contract for the sale of any part or all of said premises, or with reference to all or any part of said premises except only such contracts as shall have been expressly approved by it.

"(3) The Ohio Savings Bank & Trust Company as trustee accepts the trusts so created, subject to the limitations and reservations named herein."

After the execution and delivery of the above contract and deed, the parties of the second part, by sufficient writing executed and delivered, and for a valuable consideration, transferred and assigned their interest thereunder to the Toledo Building Company, a corporation, on or about March 15, 1920. The property referred to in the

original contract was afterwards subdivided into lots, and on September 24, 1920, the Toledo Building Company sold to the plaintiff, George Lasich, of Monroe, Mich., one of such lots for $925, upon a land contract which provided for a payment down and the balance in installments, and in July, 1922, plaintiff succeeded in fully paying for such lot, all payments having been made to the Toledo Building Company. Thereupon the Toledo Building Company tendered to the Ohio Savings Bank & Trust Company, trustee, $200, which was the release value of the lot sold to George Lasich under the agreement of the parties involved, together with all other sums of money due under such contract for the sale of such lot, and demanded that a deed be executed for the lot so sold to George Lasich. The demand was refused by the trustee upon the ground that the Toledo Building Company was in default in the performance of the original contract.

We think that under the original contract the trustee obligated itself to make deeds to purchasers who purchased lots from second parties or their assigns, and that when such purchaser from the Toledo Building Company fully performed his contract it was the duty of such trustee, up to such time as it might reconvey the property to the first party, to execute a deed to such purchaser. We are also of the opinion that the trustee was as much a trustee for the "nominee" of the second parties as for any party to the contract, and when such purchaser from second parties, or "nominee," as the contract calls him, acquired a title in equity by paying the full purchase price and causing prop-

er tender to be made to the trustee he could, by a proceeding of an equitable nature for that purpose, compel the trustee still having the legal title to convey to him such legal title, and after the second party assigned its rights to the Toledo Building Company that company stood in the shoes of the second parties.

We call attention to the following quotation from 36 Cyc., 770, on the subject of specific performance:

"*Person for Whose Benefit Contract is Made.* —The suit is properly brought by the person for whose benefit the promise was made to another, according to the doctrine prevailing in many of the states."

We also call attention to *Crocker* v. *Higgins,* 7 Conn., 342, and *Allen* v. *Davison,* 16 Ind., 416, cited under the provision above quoted.

We also quote the following from 9 Cyc., 374:

"*4. Promise for the Benefit of Third Person— (a) Doctrine that Third Person Cannot Sue.—* (I) In General.* In England it is held, subject to the exceptions hereafter stated, that where two persons make a contract in which one of them promises to confer benefits upon a third party, the latter cannot sue upon the contract, at law or in equity, for the money or other benefit which it is promised that he shall receive. The same doctrine, with some difference as to the exceptions, has been held, in the absence of a statute, in some of the United States and in some of the federal cases. The reason is that it is held essential that the consideration shall move from the plaintiff; there must be privity between the parties in order to support an action on the contract.

"(II) *Exceptions*—(*a*) *Trust.*—To the general rule above stated there are several exceptions or apparent exceptions. In the first place, where the promise of benefit to the third party creates a trust in his favor he may enforce the trust in a court of equity."

The prevailing doctrine in the United States is that where a contract is made for the benefit of a third party such party may sue thereon. 13 Corpus Juris, 705. This rule is recognized in Ohio in *Crumbaugh* v. *Kugler,* 3 Ohio St., 544; *Thompson* v. *Thompson,* 4 Ohio St., 333; *Trimble* v. *Strother,* 25 Ohio St., 378; *Brewer* v. *Maurer,* 38 Ohio St., 543, 43 Am. Rep., 436; *Emmitt* v. *Brophy,* 42 Ohio St., 82. The fact that the particular person who is to benefit from a promise is not known when the promise is made is immaterial. 13 Corpus Juris, 711.

It is claimed, however, by the trustee, that the contract and deed contain express provisions which show that the purchaser was not entitled to a deed. The provisions in the deed relied on are as follows:

"Said trustee shall not be responsible for or liable in any respect * * * for any contract for the sale of any part or all of said premises, or with reference to all or any part of said premises except only such contracts as shall have been expressly approved by it."

Those so relied on in the contract are as follows:

"It is expressly agreed and understood by the parties hereto that the party of the first part and said trustee do not assume any obligations or responsibility to any persons to whom the parties

of the second part may sell or contract to convey the whole or any part of said property.  *  *  *

"The trustee will hold the legal title to said property so long as no default shall be made by the said second parties in the faithful performance of each and every condition and payment by them to be made and performed.  *  *  *

"The trustee shall not be responsible for any act, omission or default of the said second party, or of any agent, person, or attorney employed by them."

Standing alone the foregoing provisions would seem to sustain the trustee in its contention, but there are, in the deed and contract, certain other provisions which must not be lost sight of.  The deed contains the following provisions:

"Trustee may bargain, sell, dispose of and convey said premises or any part thereof, and may contract for the sale or disposition of said premises or any part thereof in accordance with the terms and provisions of a certain agreement dated February 28, 1920, between Frank Collins as first party, William F. Greenbaum and Louis Dery, parties of the second part, and the Ohio Savings Bank & Trust Company, trustee.  *  *  *

"Any and all contracts, deeds, instruments of conveyance or other acts of the trustee shall be absolutely binding upon the parties executing said agreement of February 28, 1920."

The contract contains the following provisions:

"Said trustee shall be bound to the parties of the second part only to convey said land to the parties of the second part or their nominees upon the performance of the terms and conditions herein to be

kept and performed by said second parties herein expressly set forth.

"Said trustee will upon payment to it of the full release value of any lot, or lots, set out in the attached schedule, and the interest from the last semiannual payment, on the release price of such lot, or lots, and the revenue required on the selling price and one ($1.00) dollar for preparation of each deed, execute a deed for such lot, or lots to said second parties or their nominees."

We think it is made apparent that one of the express agreements which the trustee entered into, and one of the obligations of the trust, was to execute deeds to a nominee of second parties when the terms of the contract were complied with by such nominee. In fact, the very object of the trusteeship was to enable the land to be subdivided and sold to such subpurchasers. We think, looking to the four corners of the deed and contract, that there is no provision in either, or in both when construed together, which will relieve the trustee from executing a deed to such subpurchaser when the contract is fully complied with by such sub-purchaser, and all required amounts of money have been paid or tendered to the trustee, and that this obligation rests on the trustee up to the time that it reconveys the premises to the first party or conveys them to the assignee of the second parties. Legal title to the premises remained in the trustee until transferred to another by conveyance or otherwise, notwithstanding a default on the part of the Toledo Building Company. Such default alone could not divest the trustee of legal title. The clause in the deed which purports to relieve the

trustee from responsibility or liability for any contract which has not been expressly approved by it could hardly relieve it from the performance of an obligation which it specifically assumed as trustee, under the express terms of the contract.

It is claimed that the contract lacks mutuality and therefore cannot be specifically performed. In this connection we quote from 35 Cyc., 631, as follows:

"If plaintiff has performed his unenforceable promise, the fact that before such performance there was lack of mutuality in the remedy is no defense."

The plaintiff had done everything that he could do to perform his contract, and proper tender had been made. Lack of mutuality could not be a defense under the circumstances, but before the decree may become effective plaintiff must make his tender good by bringing all moneys due the trustee into court.

To summarize our position, we are of the opinion that this is more than a mere action for specific performance of a contract. We think that, in addition to that, it is an action to enforce a trust. The contract and deed impose a trust upon the trustee toward the first party, the second parties, the assignees of the second parties, and the nominees of the second parties or its assigns; that, where such a nominee has done everything that he was required to do to perfect his title to a lot purchased as contemplated by the parties under the original contract, and proper tender has been made to such trustee of such an amount as is required by the original contract, for all pur-

poses, then the trustee holds the legal title to such lot in trust for such nominee and a court of equity will compel a conveyance; that the trustee held the legal title to the property until it had conveyed it to some one else by deed, and, so long as it held the legal title, it was compelled to perform the obligations of its trust.

For the reasons indicated the plaintiff will be granted the relief prayed for.

*Decree for plaintiff.*

RICHARDS and YOUNG, JJ., concur.